25CA1202 Estate of Sakas-Sluder 07-09-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1202
Arapahoe County District Court No. 22PR30962
Honorable H. Clay Hurst, Judge

In re the Estate of Elena Sakas-Sluder, deceased.

Reed O'Brien,

Appellant,

v.

Regina G. O'Brien,

Appellee.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE KUHN
Freyre and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 9, 2026

Reed O'Brien, Pro Se

Olsen & Mahoney, LLP, Kevin S. Mahoney, Andrea N. Mahoney, Glendale, Colorado, for Appellee

¶ 1     If a decedent had executed a quitclaim deed giving her daughter a joint-tenancy interest in a home before the decedent passed, should the decedent's estate be allowed to untimely contest the deed and attempt to bring the home into probate?  The district court answered this question according to the facts established at trial: No.  We affirm.

## I.     Background

¶ 2     In 2016, decedent, Elena Sakas-Sluder, executed a quitclaim deed that created a joint tenancy in her home between herself and her daughter, appellee, Regina G. O'Brien.[1]  Years later, Sakas-Sluder's grandson, appellant, Reed O'Brien, and her former son-in-law, Terrence O'Brien, helped Sakas-Sluder revise her will to devise the home to Reed.

¶ 3     In 2022, Sakas-Sluder passed away, and Terrence initiated formal probate proceedings.  Terrence was appointed as the initial personal representative.  Reed was later appointed as the successor personal representative before trial.  In the probate case, Terrence filed a petition, which he later amended, raising four claims against

---

[1] To distinguish between individuals, we refer to the O'Brien family members by their first names.  In doing so, we mean no disrespect.

Regina: fraudulent misrepresentation, breach of fiduciary duty, unjust enrichment, and civil theft. These claims challenged the transfer of the home to Regina through her joint tenancy with Sakas-Sluder, alleging that Regina had deceived Sakas-Sluder into creating the joint tenancy to prevent the home from passing through probate.

¶ 4     Regina moved to dismiss the claims against her under C.R.C.P. 12(b)(5). The district court initially dismissed three of the claims as barred by the statute of limitations according to the allegations in the petition, leaving the civil theft claim to proceed to trial. But at trial, the court granted the personal representative's motion to reconsider, and the court reinstated the three dismissed claims.

¶ 5     Following the trial, the court found in a written order that the statutes of limitation did in fact bar all of the estate's claims. The court further addressed and denied each of the claims on their merits.

## II.     Discussion

¶ 6     On appeal, Reed, as successor personal representative, contends that the district court erred by (1) finding that statutes of

2

limitation barred the estate's claims; (2) denying in the alternative each of the estate's claims on their merits; (3) precluding certain evidence and admitting other evidence at trial; (4) exhibiting a pattern of erroneous and belated rulings; (5) limiting the estate's time to present its case; and (6) denying his motion to intervene and a petition he filed in his individual capacity. Also, both parties request appellate attorney fees. We address each contention in turn.

## A. Statutes of Limitation

¶ 7    Reed contends that the record does not support the district court's finding that the applicable statutes of limitation bar the estate's claims against Regina. We disagree.

### 1. Standard of Review and Applicable Law

¶ 8    "We review a [district] court's judgment entered following a bench trial as a mixed question of fact and law." *Fear v. GEICO Cas. Co.*, 2023 COA 31, ¶ 15, *aff'd on other grounds*, 2024 CO 77. "We review legal conclusions de novo and will disturb factual findings only if they are clearly erroneous and not supported by the record." *Id.* (citations omitted). When a party is pro se, as Reed is, we construe that party's filings broadly, but it is not our role to act

3

as an advocate for self-represented parties. *See Johnson v. McGrath*, 2024 COA 5, ¶ 10.

¶ 9     "The credibility of witnesses, sufficiency, probative effect, and weight of the evidence, as well as any inferences or conclusions to be drawn therefrom, are all within the province of the [district] court." *Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 7 (citation omitted). "If the evidence is conflicting, we may not substitute our own conclusions for those of the [district] court merely because there may be credible evidence supporting a different result." *Frisco Lot 3 LLC v. Giberson Ltd. P'ship, LLLP*, 2024 COA 125, ¶ 66.

¶ 10     When a claim accrues and whether it is barred by a statute of limitations are questions of fact. *Jackson v. Am. Fam. Mut. Ins. Co.*, 258 P.3d 328, 332 (Colo. App. 2011); *see also Black v. Black*, 2018 COA 7, ¶ 87 ("The date a claim accrues is a question of fact that we review for clear error."). "[T]he statute of limitations does not begin to run until the cause of action has accrued . . . ." *Jones v. Cox*, 828 P.2d 218, 223 (Colo. 1992).

¶ 11     A claim accrues when the relevant information was known or should have been known through reasonable diligence. *See*

4

§ 13-80-108(1), (3), (6), C.R.S. 2025. Under their respective statutes of limitation, the claims of fraudulent misrepresentation, breach of fiduciary duty, and unjust enrichment must be commenced within three years of their accrual. § 13-80-101(1)(a), (c), (f), C.R.S. 2025; *see Chidester v. E. Gas & Fuel Assocs.*, 859 P.2d 222, 228 (Colo. App. 1992) (fraud); *Tisch v. Tisch*, 2019 COA 41, ¶ 37 (breach of fiduciary duty); *Sterenbuch v. Goss*, 266 P.3d 428, 437 (Colo. App. 2011) (unjust enrichment). The claim of civil theft must be brought within two years. § 13-80-102(1)(a), C.R.S. 2025; *see Black*, ¶ 87.

## 2. Additional Facts

¶ 12 In his 2022 petition, Reed alleged that Regina had deceived Sakas-Sluder into executing the quitclaim deed and creating a joint tenancy by telling Sakas-Sluder that the joint tenancy would provide tax advantages. According to Reed, Sakas-Sluder was "unaware of the rights she signed to Regina" until Reed and Terrence put Sakas-Sluder in contact with an attorney in 2020. Not until that consultation did Sakas-Sluder allegedly learn that the home would, upon her death, transfer in its entirety to Regina outside of probate.

¶ 13    However, Regina presented at trial the following testimony to support the conclusion that Sakas-Sluder had executed the quitclaim deed in 2016 with the intent of transferring the home to Regina after Sakas-Sluder died:

- Regina testified that Sakas-Sluder had said that she wanted to leave Regina the home when Sakas-Sluder died, and they had discussed doing so through a quitclaim deed.

- Regina's daughter testified that, before 2016, Sakas-Sluder and Regina had several discussions about executing paperwork to ensure that the home transferred to Regina when Sakas-Sluder died.

- Three disinterested witnesses testified that Sakas-Sluder had told each of them over the course of many years — including from around 2016 until before 2020 — that she wanted to leave the home to Regina.

- Regina and Regina's daughter testified that Sakas-Sluder's husband had used a quitclaim deed to pass his home to Regina's sister upon his death in approximately 2007.

- One of the disinterested witnesses testified that before 2016 she had discussed with Sakas-Sluder how the witness's

6

father had added the witness to his home's title to allow her to acquire the home when he died, and not long after that discussion, Sakas-Sluder told the witness that she was leaving the home to Regina.

- Sakas-Sluder executed a new will in 2019, giving half of her estate to Regina and half to Regina's sister.

- Regina's daughter and one of the disinterested witnesses testified that Sakas-Sluder described her estate planning intent as the home going to Regina and a pension going to Regina's sister.

The court found these witnesses credible.

¶ 14    Reed also testified that before 2016 he had heard Sakas-Sluder say multiple times, "[Regina] gets the house." Further, the quitclaim deed expressly stated that Sakas-Sluder conveyed the home to herself and Regina "in joint tenancy."

¶ 15    Regarding the execution of the deed itself, the testimony showed that Regina delivered the unsigned but partially filled out quitclaim deed to Reed. At Regina's direction, Reed wrote on the deed the legal description of the home and that it was being granted in joint tenancy. Reed then gave the deed to Sakas-Sluder, she

signed it in front of a notary with Reed present, and Reed had the signed deed recorded. Lastly, there was no evidence that Sakas-Sluder lacked capacity in 2016.

¶ 16 The district court found Regina, her daughter, and the disinterested witnesses to be credible. But the court did not find credible the testimony given by Reed, Reed's cousin, and Terrance suggesting that Sakas-Sluder didn't understand the implications of the quitclaim deed. After making these determinations, and upon weighing the evidence, the court found that Sakas-Sluder "knew that [she] and Regina jointly owned the [home] when she signed the [d]eed [in] 2016." The court therefore found "for purposes of the [s]tatute of [l]imitations that [Sakas-Sluder] knew of the transfer and intended that it would cause the [home] to be Regina's [in] 2016 when she signed the [d]eed."

### 3. The Estate's Claims Are Barred by the Statutes of Limitation

¶ 17 Reed asserts that the record fails to support the district court's findings because there is a lack of evidence showing that Sakas-Sluder was aware of the ramifications of the joint tenancy when she executed the quitclaim deed. Thus, according to the estate, the

8

claims couldn't accrue until 2020 when she came to appreciate that the home would pass outside of probate.

¶ 18 As a preliminary matter, we interpret the district court's findings made "for purposes of the statute of limitations" as implicitly ruling that the claims were barred. But to the extent this implication is ambiguous, it doesn't impact our disposition because we can affirm on any grounds supported by the record. *See Migoya v. Wheeler*, 2024 COA 124, ¶ 40.

¶ 19 Here, the record supports the conclusion that Sakas-Sluder knew or should have known of the alleged underlying injuries for each claim when she executed the deed in 2016. *See* § 13-80-108(1), (3), (6). In the petition, Reed alleged that Regina committed the following acts to establish each of his claims.

- Fraudulent Misrepresentation: "Regina deceived [Sakas-Sluder] into believing that her execution of the [d]eed would be helpful for tax purposes." That misrepresentation caused Sakas-Sluder to execute the quitclaim deed and transfer the home without consideration.

- Breach of Fiduciary Duty: Regina was allegedly acting in a fiduciary capacity as financial agent according to a general

9

power of attorney. She breached her duty by facilitating the execution of the quitclaim deed through the fraudulent misrepresentation that the quitclaim deed would provide Sakas-Sluder a tax advantage, and she didn't tell Sakas-Sluder of the implications that the transfer of the home to Regina would have.

- Civil Theft: Regina intentionally obtained control of the home by fraudulently misrepresenting to Sakas-Sluder that the execution of the quitclaim deed would provide Sakas-Sluder with tax advantages.

- Unjust Enrichment: Regina unjustly received the benefit of having the home transfer to her upon Sakas-Sluder's death, which deprived Sakas-Sluder of distributing the home through her will.

¶ 20 But the record doesn't support those claims. Testimony of multiple witnesses, whom the district court found credible, demonstrated that she intended to execute the quitclaim deed as a way of transferring the home after her death to Regina. As noted above, Sakas-Sluder had discussed this intent with others on multiple occasions. And she had — at the least — a basic

understanding of the effects the deed would have on her interests in her home because she knew of similar processes completed by her husband and a friend's father to transfer property through a deed instead of a will.

¶ 21 The evidence further supports the conclusion that Sakas-Sluder signed the deed voluntarily without Regina's direct participation and that she understood the deed would create a joint tenancy by its plain language and through her earlier dealings. By contrast, the estate presented no evidence that Sakas-Sluder lacked capacity in 2016. Indeed, the court found, "Although [Sakas-Sluder] at times had medical complications in the years *following the signing* of the [d]eed there is nothing before the [c]ourt suggesting [she], as a result of those medical complications, was unable to act (or instruct her [p]ower of [a]ttorney to act) with regard to challenging the [d]eed."[2] (Emphasis added.)

¶ 22 The court's findings, which have record support, also support its conclusion that Sakas-Sluder intended to transfer her interest in

---

[2] The record indicates that Regina had concerns about Sakas-Sluder's capacity starting around 2020, but Sakas-Sluder declined to take cognitive assessment tests. In 2021, she suffered a stroke several months before she died.

the home to Regina, and Sakas-Sluder knew that the deed fulfilled her intent by creating a joint tenancy. Therefore, when she executed the quitclaim deed, Sakas-Sluder knew or should have known of the following pieces of information that establish the accrual date for each of the estate's claims as occurring in 2016.

- Fraudulent Misrepresentation: "[T]he exercise of proper prudence and diligence, would enable [Sakas-Sluder in 2016] to discover the fraud" that the deed wouldn't be helpful for tax purpose as allegedly misrepresented by Regina. *Chidester*, 859 P.2d at 228.

- Breach of Fiduciary Duty: Sakas-Sluder knew in 2016 that Regina allegedly "engaged in wrongful conduct" while acting under a power of attorney by fraudulently misrepresenting that the quitclaim deed would provide tax advantages and not telling Sakas-Sluder of the implications of the joint tenancy, and "that wrongful conduct caused some damages" by preventing the home from being distributed

12

according to Sakas-Sluder's last will.[3] *Prospect Dev. Co. v.*

*Holland & Knight, LLP*, 2018 COA 107, ¶ 26.

- Civil Theft: In 2016, "the injury and its cause" that Regina had obtained control of the home by fraudulently misrepresenting to Sakas-Sluder that the quitclaim deed would provide tax advantages were "known or should have been known by the exercise of reasonable diligence." *Black*, ¶ 87 (quoting § 13-80-108(1)).

- Unjust Enrichment: 2016 is when Sakas-Sluder "discover[ed], or through the exercise of reasonable diligence should [have] discover[ed]," that Regina had received the

---

[3] We note that breach of fiduciary duty has a lower standard of inquiry than that of other claims. *Fiscus v. Liberty Mortg. Corp.*, 2014 COA 79, ¶ 19 ("[I]n a fiduciary relationship . . . , 'facts which would ordinarily require investigation may not excite suspicion, and the same degree of diligence is not required.'" (citation omitted)), *aff'd on other grounds*, 2016 CO 31. To the extent that Reed argues that this standard applies here, there is no evidence that Regina was acting in her fiduciary capacity simply by having Reed deliver the deed to Sakas-Sluder. Besides, even under a lowered standard, Sakas-Sluder had sufficient notice for accrual based on the facts supported in the record, as discussed above. *See Hansen v. Lederman*, 759 P.2d 810, 812 (Colo. App. 1988) (holding that the plaintiff's claim accrued when he had "notice of facts which, in spite of the fiduciary relationship, gave rise to his duty of reasonable inquiry and enabled him to discover [the fiduciary's] fraud against [them]").

benefit of the home transferring to her upon Sakas-Sluder's death, and that benefit to Regina deprived Sakas-Sluder of passing the home through her will. *Sterenbuch*, 266 P.3d at 437 (citation omitted); *see also Bd. of Governors of Colo. State Univ. v. Alderman*, 2025 CO 9, ¶ 35 (elements for unjust enrichment).

¶ 23 In addition to these facts, the district court's findings are fatal to the estate's claims: "The [district court] therefore f[ound] for purposes of the [s]tatute of [l]imitations that [Sakas-Sluder] knew of the transfer and intended that it would cause the [home] to be Regina's on January 15, 2016[,] when she signed the [d]eed in front of the Notary Public." The district court did not clearly err in its findings. The record supports the findings that the claims in the estate's 2022 petition accrued in 2016, meaning that the claims were barred by the two- and three-year statutes of limitation. *See Fear*, ¶ 15.

¶ 24 Reed asserts that the claims couldn't accrue until Sakas-Sluder consulted an attorney about the precise ramifications of a joint tenancy in 2020. But Reed's assertion fails because the statute of limitations "does not reward denial or self-induced

ignorance." *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 854 (Colo. App. 2007) (citation omitted). Even if we accept that Sakas-Sluder did not appreciate the precise contours of the joint tenancy or the tax ramifications, these facts are not enough to overcome the court's finding that Sakas-Sluder knowingly executed the deed intending it to transfer the home to Regina.

¶ 25    Further, the record shows that as of 2016 Sakas-Sluder had a Lithuanian college degree, had an associate degree from a community college in the United States, spoke several languages, had a successful career as a dietician, had previously handled her own real estate transactions, and handled all her own finances. Thus, Sakas-Sluder had the intellectual capability and relevant experience to understand the effects of the quitclaim deed. So the language of the deed, her intent to transfer the home to Regina, and her familiarity with similar transactions sufficiently established that someone of her capability could, through the exercise reasonable diligence, know about the ramifications of the joint tenancy in 2016. Consequently, her knowledge for accrual purposes did not depend on her consultation with an attorney in 2020. *See id.* at 854-55 (holding that an accrual depends on facts pertinent to the

injury, not on the date a claimant consults an attorney to discover if they have an actionable claim).

### 4. We Decline to Address the Estate's Merits and Evidentiary Contentions

¶ 26    Because we have determined that the statutes of limitation barred the claims, we need not address the estate's contention that the district court's ruling on the merits of the estate's claims misapplied the law and lacked evidentiary support. *See Migoya,* ¶ 40.

¶ 27    We further reject the estate's contention that the district court abused its discretion at trial. The estate claims that the court erred by excluding an adult protective services report from 2020, precluding portions of a text chain between Regina and Reed from 2021, and admitting an excited utterance regarding Reed attacking and choking his sister — an event unrelated to Sakas-Sluder or her home — which occurred at an unspecified time.[4] This evidence all related to events that occurred *years after* the 2016 execution of the quitclaim deed. Accordingly, this evidence was not relevant to — and indeed had no connection to — the accrual of the claims.

---

[4] On appeal, the estate alleges that the assault occurred in 2020.

16

Therefore, even if we were to assume that the court erred in any of these decisions, any such errors would be harmless. *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties.").

### B. The District Court's Pattern of Conduct

¶ 28 Reed contends that the district court prejudiced him through a pattern of erroneous and biased rulings. Reed did not preserve this issue, but he asks us to review under plain error.

¶ 29 "[P]lain error review in civil cases applies only in unusual or special circumstances and, even then, 'only "when necessary to avert unequivocal and manifest injustice."'" *Caylao-Do v. Logue*, 2025 COA 42, ¶ 33 (citation omitted). Here, Reed casts aspersions on the district court and raises generalized disagreements with the court's evidentiary rulings. But our review of the record shows that the court acted competently, fairly, and patiently while issuing its rulings with reasonable diligence and due consideration for both parties. Therefore, we perceive no unusual or special circumstances that would justify applying plain error review. *See id.*

## C. Trial Time Limits

¶ 30 Reed contends that the district court abused its discretion by providing inadequate time at trial for the estate to present its case. We are unpersuaded.

### 1. Standard of Review and Applicable Law

¶ 31 We review whether time limits violated a party's due process rights for an abuse of discretion. *Maloney v. Brassfield*, 251 P.3d 1097, 1102 (Colo. App. 2010). "A court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner, or when it misconstrues or misapplies the law." *In re Marriage of Pawelec*, 2024 COA 107, ¶ 31.

¶ 32 "[A] court may set a time limit on a hearing from the outset and monitor the parties' use of their time during the hearing." *Id.* at ¶ 30. Because due process is implicated, we employ a level of heightened scrutiny to discern whether a district court's time limits were an abuse of discretion. *Id.* at ¶ 31. We initially determine whether the court imposed inadequate limits at the outset of the proceeding. *Id.* If it didn't, we then decide whether developments during the proceeding caused the limits to become inadequate. *Id.* We look at multiple enumerated factors in reviewing whether time

limits became inadequate, including if "the complaining party made a sufficiently detailed proffer in requesting extra time." *Maloney*, 251 P.3d at 1103.

### 2. The Imposed Time Limits Were Not an Abuse of Discretion

¶ 33 At the outset of the case, the personal representative filed an unopposed motion for a three-day trial. The court denied the motion in part and scheduled the trial for two days. This meant the court ultimately afforded the parties at trial six and a half hours each.[5] At trial, Reed exhausted his time first — although the court permitted him to continue to raise objections. However, Reed didn't object to the time limits at trial or provide an offer of proof related to unpresented evidence.

¶ 34 On appeal, Reed broadly asserts that the imposed time limits made the trial unfeasible and unfair, and he claims that the limits prevented the calling of unspecified witnesses to authenticate

---

[5] At the start of trial, the district court took half a day to address the personal representative's motion to reconsider the court's pretrial order granting in part Regina's motion to dismiss. The court granted the motion to reconsider and scheduled an additional day for trial to accommodate the time spent deliberating, adding for the parties "an hour or so extra time" to the amount originally scheduled.

unspecified documents. However, he still fails to "make a 'sufficiently detailed proffer' identifying 'the evidence that [was] . . . excluded.'" *In re Marriage of Wiggs*, 2025 COA 10, ¶ 47 (quoting *Maloney*, 251 P.3d at 1103, 1105). Moreover, he doesn't explain how the time allotted was inadequate at the outset, illustrate how the time allotted became inadequate during the course of the proceedings, or address any of the factors relevant to the adequacy of time limits. *See Maloney*, 251 P.3d at 1102-03. Without providing an offer of proof at trial, specifically identifying the evidence on appeal, or establishing specific inadequacies, Reed fails to show that the court abused its discretion. *See Wiggs*, ¶ 47; *cf. In re Marriage of Yates*, 148 P.3d 304, 310 (Colo. App. 2006) (holding that a time limit of seven hours per side was not an abuse of discretion).

D. Reed's Individual Motion to Intervene and Petition

¶ 35 Recall that Terrence was the estate's initial personal representative pretrial. In 2024, while Terrence was still the personal representative, Reed moved to intervene on his own behalf and petitioned for individual relief by raising the same four claims

that the estate's 2022 petition raised.[6]  The district court denied the motion to intervene as moot and dismissed the petition under Rule 12(b)(5) as barred by the statutes of limitation.

¶ 36     On appeal, Reed's challenges to the district court's rulings seemingly conflate the motion to intervene and the petition.  But we address each pleading separately.

### 1.     Reed's Motion to Intervene Was Moot

¶ 37     As best we can discern, Reed contends that the district court erred by denying his motion to intervene because the motion "should have been considered timely" as he submitted it "before the case management conference and before trial was set."

¶ 38     We reject this contention because the court denied the motion to intervene as moot, clarifying that Reed "is an interested person" who "may participate in this action without the need to intervene." *See* § 15-10-201(27), C.R.S. 2025 (defining "interested person" as including heirs and beneficiaries).  And the court granted Reed the relief sought in his motion — to have the court address his

---

[6] Distinct from the estate's petition, Reed's petition asked for punitive damages.

petition — undermining Reed's assertions on appeal.[7]  *See Black*,

¶¶ 76-77 (holding that a district court has broad authority to

resolve disputes logically related to the estate).

### 2. Reed's 2024 Petition Was Properly Dismissed

¶ 39    Next, Reed contends that the district court erred by applying

the statutes of limitation to dismiss the claims in his 2024 petition.

This is error, Reed claims, because the petition related back under

C.R.C.P. 15(c) to the estate's 2022 petition.[8]

### a. Standard of Review

¶ 40    We review de novo a dismissal for failure to state a claim

under Rule 12(b)(5), and we apply the same standards as the

district court.  *Norton v. Rocky Mountain Planned Parenthood, Inc.*,

2018 CO 3, ¶ 7.  To survive dismissal under Rule 12(b)(5), a

claimant must plead sufficient facts that suggest plausible grounds

---

[7] We further note that Reed's motion to intervene stated that Terrence's appointment as personal representative didn't adequately represent Reed's interest.  But at trial, the district court permitted Terrence to resign and appointed Reed to serve as the personal representative.  The court's appointment of Reed as successor personal representative thus necessarily avoided the prejudice alleged in Reed's motion to intervene.  *See* C.A.R. 35(c).

[8] The estate amended its petition in 2024.

22

to support a claim for relief. *Warne v. Hall,* 2016 CO 50, ¶ 24; *Froid v. Zacheis,* 2021 COA 74, ¶ 29.

¶ 41 In conducting our review, "[w]e accept all factual allegations in the complaint as true, viewing them in the light most favorable to the [claimant], but we are not required to accept bare legal conclusions as true." *Norton,* ¶ 7. We may consider only "facts alleged in the pleadings, documents attached as exhibits or incorporated by reference, and matters proper for judicial notice." *Id.* We will uphold a district court order granting a Rule 12(b)(5) motion only if the claimant's factual allegations don't support the claim for relief as a matter of law. *Norton,* ¶ 7.

### b. Additional Facts

¶ 42 In pertinent part, Reed's 2024 petition alleged that Sakas-Sluder "was unaware of the rights she signed to Regina until [Sakas-Sluder] met with [an attorney] and [Terrence] in October of 2020." After the district court allowed Reed to file his petition as an interested party, Regina moved under Rule 12(b)(5) to dismiss his claims. The court granted the motion because the claims didn't allegedly accrue until 2020, resulting in the statutes of limitation

barring Reed's claims. The court awarded Regina reasonable attorney fees associated with her motion to dismiss against Reed.

### c. The Statutes of Limitation Barred Reed's Claims

¶ 43    Taking the allegations in Reed's 2024 petition as true, as we must in considering a motion to dismiss under Rule 12(b)(5), Reed's claims accrued when Sakas-Sluder learned of the legal ramifications of the quitclaim deed during her attorney consultation in 2020. As discussed *supra* Part II.A.3, there is a three-year statute of limitations for fraudulent misrepresentation, breach of fiduciary duty, and unjust enrichment, and there is a two-year statute of limitations for civil theft. Therefore, the statutes of limitation bar Reed's 2024 petition because he filed it four years after the claims accrued. *See* § 13-80-101(1)(a), (c), (f); § 13-80-102(1)(a); § 13-80-108(1), (3), (6), (8).

¶ 44    We are unpersuaded by Reed's claim that Rule 15(c) allows his 2024 petition to relate back to the estate's 2020 petition. The relation back doctrine under Rule 15(c) applies to amendments, and

Reed's petition didn't amend the 2020 (or any other) petition.[9]  *See Kelso v. Rickenbaugh Cadillac Co.*, 262 P.3d 1001, 1003 (Colo. App. 2011) ("The plain language of [Rule 15(c)] clearly provides that it applies only to the amendment of a pleading in an ongoing action . . . ."); *Subryan v. Regents of the Univ. of Colo.*, 789 P.2d 472, 475 (Colo. App. 1989) ("[Rule] 15(c) allows an amended pleading to relate back to the date of the original pleading under certain circumstances."); § 15-12-107(1)(a), C.R.S. 2025 (noting that each proceeding before the court is independent of every other proceeding involving the same estate).

¶ 45    Reed further contests the district court's award of attorney fees to Regina for her successful motion to dismiss.  He claims that the award was unwarranted because his petition wasn't frivolous and fees cannot be awarded based on a dismissal under the statutes of limitation.

---

[9] Within his C.R.C.P. 15(c) contention, Reed cites federal case law, which states in part that the federal rules permit the "addition of a party who has a close identity of interest with the old party." *Travelers Indem. Co. v. U.S., for Use of Constr. Specialties Co.*, 382 F.2d 103, 106 (10th Cir. 1967).  To the extent Reed contends that his being an additional party substituted into the case allowed his petition to relate back, his contention fails.  The federal law cited addresses substitutions of defendants, which is inapposite here.

¶ 46   However, we reject Reed's contention because Regina successfully obtaining dismissal of Reed's tort claims under Rule 12(b)(5) meant the award of fees was mandatory. *See* § 13-17-201(1), C.R.S. 2025. And contrary to Reed's assertions, the fees remain mandatory even if the court based the dismissal on the statutes of limitation.[10] *See Crandall v. City & County of Denver*, 238 P.3d 659, 665 (Colo. 2010) (holding that an award of attorney fees is mandatory without exception for a "plaintiff's tort action . . . dismissed pre-trial on a [Rule] 12(b) motion to dismiss").

### E.   Appellate Attorney Fees and Costs

¶ 47   We deny Reed's novel request for pro se appellate attorney fees because he provides no factual or legal basis for such an award. *See* C.A.R. 39.1. Moreover, he does not prevail in this appeal.

---

[10] Reed misconstrues the record when he claims opposing counsel conceded at trial that the court cannot use the statutes of limitation to grant a C.R.C.P. 12(b)(5) motion. Reed refers to counsel stating, "[The estate] filed motions to reconsider based on . . . it's a 12(b)(5) motion, therefore, [the court] can't dismiss for statute of limitations, but you treat it as a judgment on the pleadings." Review of the record shows that counsel's statement referred to a pending motion for summary judgment brought against the estate. Regarding the motion to dismiss brought against Reed's petition, counsel said, "Reed's entire petition *is still dismissed* because adding a new party plaintiff, you cannot do that under C.R.C.P. 15(c)." (Emphasis added.)

¶ 48 Under C.A.R. 39.1 and C.A.R. 39(a), Regina requests appellate attorney fees and costs. As discussed, Regina successfully moved to dismiss Reed's tort claims, resulting in a mandatory award of attorney fees. *See* § 13-17-201(1); *Crandall*, 238 P.3d at 665. Because she successfully defended this dismissal on appeal, she is entitled to an award of reasonable appellate attorney fees. *Mosley v. Daves*, 2025 COA 80, ¶ 60. And because we affirm the order, she is also entitled to her costs on appeal. *See* C.A.R. 39(a).

### III.   Disposition

¶ 49 The order is affirmed, and the case is remanded to the district court to determine the amount for an award of reasonable appellate attorney fees and costs as directed in this opinion. *See* C.A.R. 39.1.

JUDGE FREYRE and JUDGE JOHNSON concur.